The next case today, number 241295, Sonia Patricia Mayancela Guaman et al. v. Merrick B. Garland. Counsel for the petitioner, please introduce yourself on the record to begin. Good morning, and may it please the court, Christian Meyer on behalf of petitioners. If I may, I would reserve two minutes for rebuttal. You may. Petitioners have petitioned this court for review of the agency decision upholding the denial of lead petitioner and co-petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture. Finding just three issues dispositive, the agency affirmed the immigration judge's decision. The first, as to the lead respondent's application, was that the lead respondent failed to establish a nexus to her gender-based particular social groups. As to both past persecution as well as a well-founded fear of future persecution. And for co-petitioner, the immigration judge properly found that he suffered politically motivated past persecution, but the government successfully rebutted that through a fundamental change in circumstances. Addressing the first issue, as to nexus, there are multiple errors for which this court must reverse. The first being that the immigration judge should not properly engage in a mixed mode of analysis. The ultimate nexus conclusion this court has held is reviewed de novo, as is the application of law. The specific language of the immigration judge's decision notes, while it does mention gender, it treats a gender-based motivation and the motivation held by the immigration judge as mutually exclusive. And does not actually engage in an analysis of whether these two things could be occurring at the same time. Counsel, didn't the immigration judge reach that conclusion, though, because the focus was on the testimony of your client? And according to the immigration judge, he says that she testified that it was Edison's drug abuse, rather than her status as a woman, that led to the sexual violence. So how do you respond to the fact that the judge was just saying the testimony didn't reflect a mixed motive, but only talked about drug abuse? Yeah, if I may respond to it in two parts. The first is that under the board's standards in matter of fuentes, it's an unreasonable burden to require an applicant for asylum to know the exact motivation. So yes, that is exactly what she testifies to, but it's not her burden to establish the exact motivation. And rarely will she even know what it is. So she says this, yes, that's absolutely true. However, numerous other points in the record point to the fact that gender was a central reason for it, which went unconsidered to see if those two motivations could coexist. So on de novo review, that should have been sent back down for reconsideration under a proper mixed motive analysis. But as to the actual motive finding by the immigration judge, it's clear error. First off, the immigration judge is alleging that inebriation in and of itself is a motivation. It is not. It may be an aggravating factor, but what the judge is saying is that anyone who drinks, their motivation to commit any act of violence, numerous rapes, is because he was drunk. That's simply unreasonable, especially considering that respondent testified to the fact that there were numerous rapes, but only sometimes did she notice that he was inebriated. So the immigration judge is silent on why these other rapes that she did not observe him under the influence. What's the motivation there? Entirely silent. Now, going back to Fuentes, the burden is only on the applicant to establish that a reasonable person in the circumstances of the asylum applicant would have a fear that the harm was motivated by the protected ground. And here, that's exactly what the record reflects. The high rates of gender-based and domestic violence within Ecuador are based on a patriarchal system that places men in, that just reinforces that men can treat women as they please without repercussion. That is throughout the record. Now, further, both the immigration judge as well as respondent here are alleging that the immigration judge's nexus finding was proper because he was an indiscriminately violent man. Again, this is unreasonable. A violent nature is a character. It's part of your character. It is not a motivation. So while true, he was indiscriminately violent, you look to the other instances of violence, and there's an underlying motivation to target the petitioner's mother. That was an act of revenge because she reported the rape and impregnation of petitioner to the police. Regarding the violent assault on petitioner's brother, that was found to be an underlying motivation because he was jealous that the brother was engaged in a relationship with a woman that he desired. Not only does that speak to underlying motivations that negate the immigration judge's finding that a violent nature is a motivation, but it also points to the treatment and viewpoints of petitioner's abuser as to his belief on the societal treatment of women. I understand how the evidence as to his attempted reprisals against mom or his violent behavior towards the brother supports your position that the motivation was because of her gender. So what it does is makes the finding that his violent nature is a motivation or a permissible motivation, it completely negates that because it shows that his, because there's an underlying motivation. If he's engaging in violent conduct outside of a gender-based norm, how does that support rather than detract from your position? Because the position of the immigration judge is that he did this because he's violent. He raped because he's a rapist. That's not a motivation, and it must be reversed. He needs to consider ulterior motives, and the other acts of violence show ulterior motives. But don't we have cases saying that it is appropriate to hold that something happened because of general, to deny relief because something happened because of general criminal activity, and it seems like that's what the IJ was saying here. This man is a criminal. He acted because he engages in criminal behavior, and it wasn't specifically targeted into gender. The case that I believe you're speaking to, a matter of MEDG, speaks to actions by criminal organizations who target wide swaths of, you know, a given society. I understand your argument, and I do think that case is very different. I'm just talking about generally when we look at nexus, we have often held, you know, there hasn't been a showing that the action here was based on protected ground. Instead, what's happened here is some sort of just criminal activity, and the petitioner's not entitled to relief from general criminal activity that somebody engages in. And again, here, your client's own testimony focused on his drug abuse. So is your argument really that it's inappropriate for an IJ ever to conclude that criminal activity was the reason and not a protected status? Well, I think that there may have been a more permissible application of that, say sexual gratification. That's an actual motivation that would, you know, be permissible. But here, just a blanket statement that, you know, a criminal engages in criminal acts is not an actual motivation. So for that reason, the immigration judge's finding was clear error. And if I can just point back to the specific theory for petitioner that her repeated sexual assault was, you know, gender-based. Again, matter of Fuentes, it does not require the knowledge of the exact motivation. So while her testimony does have some bearing, the immigration judge needs to look at this through the standard of a reasonable person, because not every single asylum applicant is going to know the exact reasons. And the country conditions evidence as to the treatment of women, the extreme levels of domestic violence and sexual violence that occur in Ecuador against women that are not similarly high for males, points to the fact that her gender was one central reason, especially considering the type of persecution that was suffered, which was sexual abuse. Thank you. Thank you. Thank you, counsel. Attorney for respondent, please come up and introduce yourself on the record to begin. Good morning. Thank you, your honors. Zachary Hubanks for the respondent, the United States Attorney General. May it please the court. The petition for review should be denied regarding both claims for relief and protection. Starting with the female petitioner's claim, the record here is replete with evidence that her cousin Edison was a violent, abusive criminal who sexually abused her because of these tendencies and his use of illicit drugs and alcohol, and not because of a characteristic of hers that is protected by the Immigration and Nationality Act. Indeed, her own testimony is that the reason he abused her is because of his drug usage, and furthermore, that he was drinking a lot. Moreover, by her own account, her own testimony. She also said that he said that women just have to put up with this. He said it was normal, something that people do, and that she would have to live with it, your honor. Yes. It's ambiguous what exactly he was saying there, and again, for this court to reverse... Well, he said that right before he assaulted her. It sort of removes a bit of the ambiguity, don't you think? I think, your honor, I think this court would have to find that that statement alone, or in conjunction with other factors, compelled a different result here, when again, we have her own testimony as to why he did what he did. You're saying that the other statement alone suffices? I'm sorry, your honor, I didn't catch that. You're saying that the statement that he was motivated by substance abuse, that one statement suffices? I think under substantial evidence review, that statement suffices, especially with this other evidence, her own testimony, that again, Edison, he put her brother into a coma because of a classic interpersonal dispute. She testified in its interdeclaration that he may have been a gang member, and he threatened her mother with a knife as an act of revenge. He's a violent, abusive criminal. What this case doesn't have is examples of, in a lot of cases, to prove a nexus, we have the persecutor using statements showing what their motivations were. We don't have use of gender language here. We don't have use of any type of statement relating directly to gender, as opposed to, again, this man who, potentially a gang member, commits acts of violence and abuse.  Yes, your honor. The petitioner, though, is making a legal argument about nexus, not just a factual argument. And under the legal test, for a protected ground not to be just discounted, it has to be tangential. And I'm trying to understand how her status as a woman, how her gender was tangential to the fact that she was raped repeatedly for years. How could it be tangential to that harm? Again, your honor, the government's position is that her gender either was not a motivation or was a tangential motivation. Because, again, if we look at this record as a whole. But how is it tangential? Because, again, it has to do with, you know, she's being targeted, and her gender has to be tangential. And the record shows that he's not targeting men for rape. So how is her gender tangential? Can you just really focus on that point? I'm working towards it, your honor. Again, it does go back to he harms individuals in various ways for various reasons. But he doesn't sexually assault people indiscriminately, correct? Based on the record, he has only assaulted, from what the record shows, women. As far as we know, he only sexually assaulted the lead petitioner in this case, who is a woman, your honor, yes. So then how could her gender be tangential to the sexual assault that happened repeatedly? We don't know his precise motivations here. Again, we don't have testimony showing that he did this because she was a woman or because of the same reason he may have assaulted other people. It gave him a feeling he had poor impulse control. He was an abusive individual who enjoyed violence, enjoyed harming individuals. That's effectively a gap in this record we don't have. This isn't a case where. We do have his testimony that this was normal and that she would have to put up with it. Yes, your honor, but again, that's just this one phrase and. You keep saying we don't have any, but I just keep bringing you back to the fact that we do at least have his or her statement of what he said. Yes, your honor, that's a statement from an abuser to the abused. And again, is he saying, this is why I'm doing it, this is normal? Or effectively saying, don't report this because this is normal, this is something happens. I mean, it's a tragic case, it's horrible, it's reprehensible. But petitioners have the burden as to the factual side of demonstrating that the record compels a contrary result to that reached by the agency. When again, the agency has petitioner's own testimony of why he did what he did. Counsel, again, I'd like you to focus on the legal question, which is even if the mixed motive analysis was cited, was it correctly applied? And petitioner's counsel saying it wasn't because the IJ, the agency didn't actually do, correct mixed motive analysis, it didn't consider whether her gender was tangential. And you mentioned just a minute ago that we don't know Edison's exact motivations, but is that what the legal standard requires, that we need to know exact motivations? Isn't just the analysis required looking at whether there could have been multiple motives and if one of them was tangential or not? Is there a case that says we need to figure out the exact motivation? Well, regarding the legal test and mixed motives, the board did cite the mixed motive standard and they did affirm the immigration judge's findings who did, it's not the most articulate version of it, but the immigration judge said, you know, this wasn't the motivation, the motivation was something else. That's not saying they are mutually exclusive. So I believe the agency did apply the correct mixed motive test and I don't know that the agency needed to provide more in explaining that it was tangential. Reading the board's decision, it affirms the immigration judge's factual findings as to effectively the overall motivation here, which is the base criminality and the illicit substance abuse. And then petitioners did not demonstrate in their, either their case before the immigration judge or in their appeal to the board that gender either was a motivation whatsoever or that it was more than tangential. I hope I finally answered your question, Judge Rickleman. I don't think you did. Yes, Your Honor. I mean, are you saying that the court, I mean, that we should, that we should say that the record is sufficient that we should conclude that, that inferentially that the immigration judge tackled the issue of whether it was a mixed motive? I think the immigration judge did find that, again, reading the decision, the immigration judge first discussed the gender-based or the sex social group and said that was not his motivation here. What I'm relying on, or the immigration judge then found he was a violent, abusive criminal and I'm relying on petitioner's own credible testimony as to why he did this. I, excuse me, I believe that is the immigration judge looking at the potential mixed motives because, again, the immigration judge first looked at the social groups before determining that's not what motivated. Or at least that petitioner who had the burden before the immigration judge did not demonstrate the requisite nexus to a protected ground, to merit, or to succeed on that aspect of the claim, Your Honor. I believe the immigration judge did it right. And then the board took the immigration judge's factual findings and cited the proper precedent and acknowledged that the possibility of mixed motive standards in the circuit. And, again, I believe. But we have case law that says citing the mixed motive analysis is not the same thing as applying it correctly and we're reviewing to see if it was applied correctly here. And I think what's missing is any analysis of why her gender is tangential, which is what it needs to be to not qualify as a central reason for the harm. And there's just no analysis of how her gender was tangential here when the record shows that Edison only targeted women for sexual violence. I do hear your point, Your Honor. Excuse me. But, again, reading the board's decision, it did, it first affirmed the immigration judge's factual findings as to motive. And then it applied the mixed motive standard because that's what was being argued to it. And it's a brief analysis, but it does at least acknowledge that petitioners did not demonstrate that it was more than tangential. And I think that gets us back into substantial evidence of whether or not that it necessarily was correct. Did petitioners demonstrate that her gender or sex was more than tangential, incidental, or superficial? When, again, if we look at the record as a whole, Edison was this violent, abusive criminal. He harmed people for a variety of reasons just, and because of his poor impulse control, whatever it may be, I, petitioners haven't demonstrated that the record compels a contrary result on this record, Your Honor. Could you move to Mr. Santander's claim and address that? Yes, please, Your Honor. Regarding Mr. Santander's claim, nothing in the record compels a finding that he has a well-founded fear of future persecution because those who've harmed him in the past, they no longer wield political power either nationally in Ecuador or in his hometown of Canaar. And, therefore, substantial evidence fully supports the agency's finding that there has been this fundamental change in circumstances. Was there any place in the record where Mr. Santander expressed fear of the current government? No, Your Honor. I'm sorry I don't have the page citation in front of me, but he only expressed a fear that former President Correa, who is now in effectively exile, would win a then-upcoming election. And he never expressed a fear of the current government, the Creo political party, or his former co-worker, who is now the mayor of his locality in Canaar. So his fear was really focused on the prior government coming back to power? Yes, Your Honor, that's how we read the record, and that's how the agency also read the record, Your Honor. And, again, the government would posit that's fully supported by substantial evidence. If there is nothing further, I see I'm out of time. The government will rest in our briefings. Thank you, Your Honor. Thank you. Attorney Meyer, please reintroduce yourself on the record. You have a two-minute rebuttal. Christian Meyer for petitioners. So transitioning to the co-petitioner's application. So I believe the respondent is citing an improper legal standard. It's not substantial evidence. This is a pure question of law. So directly from ACFR 1208.13B1, small Roman I, capital A. It's DHS's burden to show by a preponderance of the evidence that there's been a fundamental change in circumstances. So the sufficiency of the evidence is a purely legal question that the BIA has the obligation to review de novo. And it's clear that the preponderance of the evidence does not support a fundamental change. While true that President Correa is no longer in question, sorry, no longer in power, the record establishes that the persecution and specifically the political persecution of people who support indigenous rights, as did co-petitioner, they continue to face widespread societal discrimination in addition to governmental persecution. In 2019, under a different president, Lenin Moreno, there were protests that were met with violent reprisals and excessive force from government actors. And again, with the newest president who was cited by the immigration judge, again, 2021, there were further protests by indigenous rights political supporters. And there have been allegations, again, of excessive use of force. There have been allegations that supporters and leaders of these groups were falsely imprisoned. So ultimately, the preponderance of the evidence, DHS didn't meet that standard and applying a substantial evidence review is an improper standard. So looking at it de novo, it's clear DHS offered no evidence. The sole factor that they rely on is a change in party at the national level, as well as the election of a mayor at the local level. It just does not meet the standard for preponderance of the evidence. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case.